UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMONAE DESHAWN LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03986-SEB-TAB |
| ) | |
| ROSS Sgt., ) | |
| ) | |
| Defendant. ) | |

**Order Providing Notice of Intent to Grant Summary Judgment and
Directing Plaintiff to Show Cause**

Plaintiff Demonae Lewis, who at all relevant times was incarcerated at Pendleton Correctional Facility ("PCF"), brought this action pursuant to 42 U.S.C. § 1983 against defendant Sgt. Ross alleging that he violated Mr. Lewis's Eighth Amendment rights by threatening to have him physically or sexually assaulted.

Sgt. Ross now moves for summary judgment on the merits of Mr. Lewis's claim. Mr. Lewis has not responded to the defendant's motion, and the time to do so has passed, leaving the defendant's motion unopposed. The Court finds that Sgt. Ross's threats may be actionable but that the record demonstrates there is no genuine issue of material fact that Mr. Lewis has not suffered a compensable injury. The Court orders Mr. Lewis to **show cause** why it should not dismiss this action with prejudice and enter final judgment in Sgt. Ross's favor pursuant to Federal Rule of Civil Procedure 56(f)(2)–(3).

### I.     Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## I.     Factual Background

As noted above, Mr. Lewis failed to respond to the defendant's motion for summary judgment. The consequence is that Mr. Lewis has conceded the defendant's version of the events. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). The local rule provides:

> A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment.

S.D. Ind. Local Rule 56-1. This does not alter the standard for assessing a Rule 56 motion, but it does "[r]educ[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

Accordingly, the following facts, unopposed by Mr. Lewis and supported by admissible evidence, are accepted as true.[1]

Mr. Lewis was moved into the H cellhouse ("H House") at PCF on August 31, 2018. Dkt. 50-1 at 13. The next day, Mr. Lewis asked Sgt. Ross about his medication, and Sgt. Ross

---

[1] The defendant's facts are drawn almost exclusively from Mr. Lewis's deposition, admitted as exhibit 50-1. The Court, also relying on the deposition, includes more details because the omitted facts are relevant to the Court's analysis.

became aggressive and told Mr. Lewis that he was going to have Mr. Lewis sexually assaulted or beat up because it was "his house." *Id.* at 14–16.

About an hour later, Mr. Lewis reported the threats to a nurse who was walking through the cellblock, advising her that he wanted to file a complaint under PREA.[2] *Id.* at 14. He stated, "And I told her specifically because he was the sergeant of the house, so I can't go above him because the COs won't go above him. So I had her – I couldn't just tell him I wanted to file a PREA on him." *Id.* at 15. At that point, Mr. Lewis was taken to the infirmary to be interviewed, and Sgt. Ross was removed from H House pending an investigation, the results of which are unknown. *Id.* at 15, 19. A few days later, Mr. Lewis went on suicide watch. *Id.* at 17. He stated he did so because he feared for his life because other inmates in H House were "yelling out stuff saying that they heard me get into it with the sergeant, whatever, and they heard what he was saying and I'm not going to come over there and mess things up." *Id.* at 17. While on suicide watch, Mr. Lewis told a captain, a counselor, and mental health staff that he feared for his life in H House. *Id.* at 17–19.

At some point, Mr. Lewis returned to H House. He did not request protective custody, because that would have resulted in him being placed in segregation when he only wanted to be transferred out of H House. *Id.* at 35–36. On September 16, 2018, a little over two weeks after Sgt. Ross threatened Mr. Lewis, an inmate stabbed Mr. Lewis as the inmates were leaving their cells in H House to go to dinner. *Id.* at 19–20. Mr. Lewis had no warning he was going to be assaulted. *Id.* at 24.

When asked why he thought he was stabbed, Mr. Lewis stated, "I don't know. Like I said, I only been here a few months at the time." Dkt. 50-1 at 20–21. However, Mr. Lewis had not had

---

[2] "PREA" stands for the Prison Rape Elimination Act.

problems with any other inmates until Sgt. Ross threatened him, stating, "[T]he reason why I went on suicide watch because there was people yelling that I was getting into it with the sergeant, making it hot over there. And they were . . . hot, meaning basically bringing the police around and getting people in trouble." *Id.* at 21. Still, no one has told Mr. Lewis that Sgt. Ross ordered the assault, and Mr. Lewis has no evidence otherwise that Sgt. Ross ordered the assault. *Id.* at 21–22.

Mr. Lewis had three or four puncture wounds on his body which were treated with bandages and cream in the infirmary. *Id.* at 22. He was never hospitalized for the injuries, nor did he incur any medical bills. *Id.* at 24. Mr. Lewis did not suffer any mental health issues as a result of Sergeant Ross's threats. *Id.* at 24–25.

## II. Discussion

"The Eighth Amendment prohibits cruel and unusual punishments that involve the unnecessary and wonton infliction of pain." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). "The prohibition also includes acts totally without penological justification." *Id.* (internal quotation marks and citations omitted.). "Inmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests." *Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) (internal citations omitted). Sgt. Ross argues that his comments were mere harassment and not actionable, and, in the alternative, that he is protected by qualified immunity.

### a. Sergeant Ross's Comments

Although "most verbal harassment by jail or prison guards does not rise to the level of cruel or unusual punishment[,] … some does." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). "The line between 'mere' harassment and 'cruel and unusual punishment' is fuzzy." *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). The test for whether a prison guard's threatening

statement constitutes cruel and unusual punishment is objective. "It is not the actual fear of the victim, but what a 'reasonable' victim would fear." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Sgt. Ross argues that his threats to have Mr. Lewis beaten or sexually assaulted do not constitute cruel and unusual punishment. He relies largely on two Seventh Circuit cases for the proposition that his comments are not actionable. In *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), the court held that, "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment . . . ." There, a prison guard made sexually suggestive and racially derogatory comments to an inmate, but his comments did not include any threats of violence. Similarly, in *Dobbey*, the court found that a white correctional officer's act of temporarily hanging a noose in the control room and looking at the African-American plaintiff with "evil eyes" did not state a claim because the incident could only be interpreted as racial harassment rather than a bona fide threat of harm. 574 F.3d at 446.

But the Seventh Circuit has since clarified that the language in *DeWalt* was "too broad," and explained that in some instances verbal harassment may amount to cruel and unusual punishment. *Welborn*, 933 F.3d at 716 (citing *Beal*, 803 F.3d at 357, and *Hughes v. Scott*, 816 F.3d 955 (7th Cir. 2016)). In *Welborn*, the court found that a nurse's comments encouraging a mentally ill inmate to commit suicide could be found by a jury to be "cruel infliction of mental pain" because the nurse was aware of the plaintiff's vulnerability, reversing summary judgment in favor of the defendant. *Id.* at 718–19.

The facts in *Beal*, where the court also distinguished *DeWalt*, are similar to those in this case. There, a correctional officer made sexual comments in front of other inmates that insinuated the plaintiff was gay, and he urinated in front of the plaintiff while looking at him and smiling. *Id.*

5

at 358. The plaintiff alleged that after the officer made the comments, other inmates started to harass him by using derogatory language toward him. *Id.* The court noted the connection between the statements made by the sergeant and the subsequent comments made by the inmates: "Conceivably the plaintiff feared that Sergeant Schneider's comments labeled him a homosexual and by doing so increased the likelihood of sexual assaults on him by other inmates." *Id.* Similarly, after Sgt. Ross threatened to have Mr. Lewis beaten or sexually assaulted because Mr. Lewis resided in "his house," other inmates began harassing Mr. Lewis and accusing him of causing trouble in the cellblock. This induced Mr. Lewis to go into suicide watch because he was afraid for his own life. And indeed, Mr. Lewis was stabbed by an inmate, despite having no problems with inmates outside of the comments made to him after Sgt. Ross's threats. The fact that Sgt. Ross made the threats on one occasion is irrelevant in light of the fact that he was temporarily removed from H House while prison administrators investigated his actions. A factfinder could conclude that Sgt. Ross's threats induced reasonable fear in Mr. Lewis.[3]

### b. Damages

However, the Court finds that summary judgment still must be granted in Sgt. Ross's favor. To recover damages under § 1983, Mr. Lewis must produce evidence of a recoverable injury. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (citing in part *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (noting because § 1983 "created a species of tort liability . . . [a] successful § 1983 plaintiff therefore must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." (internal citations omitted)). In *Lord*, the plaintiff alleged that prison guards were deliberately indifferent to his risk of suicide. The

---

[3] By omitting any reference to the inmates' taunts in his statement of facts and failing to cite the recent Seventh Circuit caselaw that distinguished *DeWalt*, the defendant presented an overly simplistic argument to the Court.

inmate told a guard he was going to kill himself and was later found with minor cuts on his wrists that were treated with gauze and bandages. The Seventh Circuit found that because his injuries were "trivial" and the plaintiff failed to allege any psychological harm resulting from the suicide attempt, he failed to "show that he experienced any cognizable harm." *Id.* Similarly, Mr. Lewis's injuries were minor, and he incurred no costs for their treatment. With respect to psychological harm, Mr. Lewis did not seek out any mental health treatment or receive any mental health diagnoses because of Sgt. Ross's threats.

Accordingly, although a reasonable factfinder could conclude that Sgt. Ross's threats were so serious that they rose to the level of cruel and unusual punishment, Sgt. Ross is entitled to summary judgment because Mr. Lewis produced no evidence of a recoverable injury.[4] *See Lord*, 952 F.3d at 905 (noting that, without evidence of injury, "the summary judgment record revealed and left nothing for Lord to present to a jury at trial.").

Because the defendant did not argue for summary judgment based on the lack of damages, Mr. Lewis must have an opportunity to argue that there is a genuine issue of material fact that he suffered a compensable injury. *See* Fed. R. Civ. P. 56(f)(2) ("(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may: . . . (2) grant the motion on grounds not raised by a party"); *Southern Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 677 (7th Cir. 2002) (noting a district court generally

---

[4] Because the Court finds no Eighth Amendment violation, the Court need not reach the defendant's argument that he is protected by qualified immunity. *See Flournoy v. City of Chi.*, 829 F.3d 869, 877 n.10 (7th Cir. 2016) ("The defendants alternatively argue that we should affirm based on qualified immunity. Because we uphold the jury's verdict that no constitutional violation occurred, we do not reach this alternative argument.").

7

lacks the power to grant summary judgment *sua sponte* unless it has given the party against whom judgment is being entered notice and a fair opportunity to present evidence in opposition).

### III.    Conclusion

Pursuant to Rule 56(f)(2), the Court gives the parties notice of its intent to grant summary judgment in Sgt. Ross's favor due to the lack of evidence of any compensable injury. Mr. Lewis shall have until **November 23, 2020**, to show cause why judgment for Sgt. Ross should not be entered. The defendant shall have through **December 3, 2020**, to file a response if necessary.

Mr. Lewis's failure to respond in the time provided will result in the entry of final judgment for the reasons set forth above without further warning or opportunity to show cause.

**IT IS SO ORDERED.**

Date:   11/3/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEMONAE DESHAWN LEWIS
178250
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

8